IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**CHARLESTON AREA MEDICAL CENTER, INC.,**
**Employer Below, Petitioner**

**FILED**
**May 22, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-132**       (JCN: 2020021700)

**KATHY BRAGG,**
**Claimant Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Charleston Area Medical Center, Inc. ("CAMC") appeals the March 3, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Kathy Bragg filed a timely response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order denying arthroscopic revision surgery and denying a motion to reopen the claim for temporary total disability ("TTD") benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's Order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Bragg, a registered nurse, was injured in the course of, and as a result of her duties on March 24, 2020, while employed by CAMC. Specifically, Ms. Bragg sustained an injury to her right knee as she stepped down from a stool. The claim was eventually held compensable for "other tear of lateral meniscus of the right knee." On May 8, 2020, Ms. Bragg underwent an arthroscopy of the right knee with chondroplasty of the patella, trochlea, medial femoral condyle, and lateral femoral condyle, with partial medial and lateral meniscectomy, which was performed by David Ede, M.D. Ms. Bragg continued to suffer pain after her surgery, and Dr. Ede recommended a repeat surgery.

Marsha Bailey, M.D., performed an independent medical evaluation ("IME") of Ms. Bragg on September 10, 2020. Dr. Bailey opined that Ms. Bragg sustained a right knee sprain/strain and a right knee medial meniscal tear treated by an arthroscopic partial medial

---

[1] CAMC is represented by H. Dill Battle III, Esq. Kathy Bragg is represented by William B. Gerwig III, Esq.

meniscectomy, both of which were attributable to the work-related injury. According to Dr. Bailey, the injury was superimposed on a "61-year-old right knee with tricompartmental degenerative joint disease and arthrosis." As such, Dr. Bailey opined that Ms. Bragg's symptoms were attributable to both her work-related injury and her preexisting conditions. Although Dr. Bailey recommended authorizing the repeat surgery requested by Dr. Ede, she noted that it was highly unlikely that a second surgery would relieve all of Ms. Bragg's complaints given her preexisting degenerative conditions.

Based on Dr. Bailey's report, the claim administrator authorized the second surgery. Dr. Ede's operative report, dated October 2, 2020, indicated that a total meniscectomy of the posterior horn of the medial meniscus was performed, and it noted that unstable Grade 2 chondromalacia changes of the patellar and trochlear surfaces were observed. On January 5, 2021, Ms. Bragg underwent a functional capacity evaluation and was placed in the light physical demand level.

On March 11, 2021, Dr. Bailey issued a second report, indicating that she had reviewed Ms. Bragg's medical records and reexamined her. Dr. Bailey opined that Ms. Bragg's continued symptoms were solely a result of her preexisting conditions and found that she had reached maximum medical improvement ("MMI") with regard to the compensable injury. Based on Dr. Bailey's report, the claim administrator suspended Ms. Bragg's temporary total disability ("TTD") benefits.

Dr. Bailey issued an addendum report on April 5, 2021, reiterating her opinion that Ms. Bragg was at MMI for her compensable injury and that no further treatment would relieve her continued symptoms. Indeed, Dr. Bailey opined that Ms. Bragg's right knee would likely never be pain free, regardless of treatment. Subsequently, Dr. Ede authored a letter, indicating that he had reviewed Dr. Bailey's reports, and disagreed with her assessment. Specifically, Dr. Ede noted that Dr. Bailey omitted the diagnosis of medial and lateral meniscus tears in determining that Ms. Bragg had reached MMI; mischaracterized the degree of Ms. Bragg's arthritis; and found that Ms. Bragg was capable of performing all preinjury activities, unrestricted, which was contrary to her having been placed in the light physical demand level following her functional capacity evaluation. As Dr. Ede observed, the functional capacity evaluation placed general duty nursing in the medium physical demand level, a level which Ms. Bragg was not able to meet.

Dr. Bailey issued a response to Dr. Ede's correspondence, stating that her opinion remained unchanged and was based upon medical evidence and the degenerative conditions in Ms. Bragg's knee. The claim administrator closed the claim for TTD benefits on April 17, 2021. On August 10, 2022, Ms. Bragg requested authorization for a third arthroscopic surgery and to reopen the claim for TTD benefits. Medical reports from Dr. Ede were included with the request, and he noted that Ms. Bragg's knee throbbed with pain and gave out on her at times. On September 23, 2022, Dr. Bailey opined that Dr. Ede's request for a third surgery and his request to reopen the claim for TTD benefits were

2

unrelated to the compensable injury. Dr. Bailey supported her opinion with medical records that purportedly showed that Ms. Bragg's preexisting conditions were symptomatic and that she sought treatment for them prior to the injury. However, these records were never introduced into evidence during the proceedings below. On November 2, 2022, the claim administrator denied authorization for the arthroscopic revision surgery and denied reopening the claim for TTD benefits.

By order dated March 3, 2023, the Board reversed the claim administrator's order and ordered that the arthroscopic revision surgery be authorized. The Board acknowledged Dr. Bailey's opinion that the surgery was not medically related or reasonably necessary to treat the compensable injury and, rather, was aimed at treating Ms. Bragg's preexisting degenerative conditions. However, the Board concluded that Dr. Ede's opinion that the surgery was necessary to treat the compensable injury was more persuasive, as he had been treating Ms. Bragg for the compensable injury and had performed two surgeries on her. Consequently, the Board remanded the matter to the claim administrator with instructions to determine the period Ms. Bragg was temporarily and totally disabled in accordance with its ruling. CAMC now appeals and filed a motion to stay payment of any TTD benefits granted. By order dated April 20, 2023, this Court refused the stay.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, __, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, CAMC argues that the Board was clearly wrong in authorizing the arthroscopic revision surgery and reopening the claim for TTD benefits. According to CAMC, the evidence demonstrates that Ms. Bragg had reached MMI for her compensable injury and that any further treatment would have been aimed at treating her preexisting

3

degenerative joint disease. CAMC contends that Dr. Bailey's opinion that Ms. Bragg's ongoing complaints were due to her preexisting degenerative joint disease and osteoarthritis was reliable and based upon objective medical evidence, including medical records predating the compensable injury which indicate that Ms. Bragg was symptomatic and sought treatment for her preexisting conditions. Lastly, CAMC argues that the Board misapplied *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022) to this case. In sum, CAMC avers that the requested surgery was not medically necessary for, nor reasonably related to, the compensable injury, and the Board erred in authorizing the same and reopening the claim for TTD benefits based on that surgery.[2]

We disagree. West Virginia Code § 23-4-3(a)(1) (2005) provides that the claims administrator must provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies. Here, Dr. Ede, Ms. Bragg's treating physician, provided treatment for the compensable injury over the course of the underlying proceedings and consistently opined that Ms. Bragg's ongoing symptoms were related to the compensable injury and required a third surgery. In support of its assertion that the surgery should not be authorized, CAMC argues (1) that Dr. Bailey's opinion was more credible than Dr. Ede's opinion, and (2) that Ms. Bragg's symptoms were related to her preexisting degenerative issues. However, we find that the Board's decision was supported by the evidence of record.

As noted by Dr. Ede, Dr. Bailey did not consider Ms. Bragg's diagnosis of medial and lateral meniscus tears in determining that Ms. Bragg had reached MMI and mischaracterized the degree of Ms. Bragg's arthritis. Further, Dr. Bailey's opinions of Ms. Bragg's physical demand abilities were contradicted by the functional capacity evaluation. Importantly, Dr. Bailey based her opinions on medical records relating to Ms. Bragg's preexisting condition that were never submitted before the Board below. To be clear, there was no pre-injury medical evidence of any preexisting degenerative conditions submitted before the Board. Based on the evidence before it, the Board concluded that Dr. Ede's opinion was more persuasive than Dr. Bailey's opinion, given that he was Ms. Bragg's treating physician and that he had performed two surgeries on Ms. Bragg and continued to believe her symptomology was related to the compensable injury. We find that this conclusion is based upon sufficient evidence in the record, and we decline to disturb any credibility determinations made by the Board. *See Martin v. Randolph Cnty Bd. of Educ.*,

---

[2] Although CAMC raises issue with the Board's citation to and application of *Moore*, we find that the holdings set forth in *Moore* are immaterial to the limited facts of the case at bar. As noted herein, there was no evidence submitted to the Board that Ms. Bragg was symptomatic as a result of her preexisting degenerative condition prior to the compensable injury. In recommending against authorizing the third arthroscopic surgery, Dr. Bailey relied upon evidence that was not submitted into the Board's record and that did not specify which knee was allegedly symptomatic prior to the injury. Accordingly, under the limited circumstances of this case, we find no error.

4

195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . ."). Therefore, we conclude that the Board did not err in authorizing the requested surgery.

Next, in order to reopen a claim for TTD benefits, a claimant must show an aggravation or progression of a compensable condition or facts not previously considered. *See* W. Va. Code §§ 23-5-2 (2005) to 23-5-3 (2021). Because we conclude that the Board did not err in authorizing the requested surgery, we find no error in its decision to reopen the claim for TTD benefits. Ms. Bragg's newly authorized surgery is a fact not previously considered by the claim administrator in determining whether Ms. Bragg is entitled to further TTD benefits. As such, CAMC's argument in this regard is without merit.

Accordingly, we affirm the Board's order reversing the claim administrator's order denying arthroscopic revision surgery and denying a motion to reopen the claim for temporary total disability benefits.

Affirmed.

**ISSUED:** May 22, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen